UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMEL DEWITT and MARQUESE HILL,

                                        Plaintiffs,

            v.                                              1:09-cv-16

CITY OF TROY; Troy Police Officers
WILLIAM BOWLES, STEPHEN SENEY,
JEFFREY HOOVER, and WILLIAM O'NEIL,
Individually and as agents, servants and/or
employees of the City of Troy; JOHN DOE and
RICHARD ROE, whose names are presently
unknown, Individually and as agents, servants
and/or employees of the City of Troy,

                                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Plaintiffs Jamel DeWitt and Marquese Hill commenced the instant action against

Defendants asserting claims pursuant to 42 U.S.C. § 1983 for denial of liberty, unlawful

search and seizure, the use of excessive force, malicious prosecution, and related common

law claims, arising out of their arrest on January 18, 2008.  Presently before the Court is

Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal

of the Complaint in its entirety.

I.      **FACTS**

        On January 18, 2008, Plaintiffs Jamel DeWitt and Marquese Hill (collectively

"Plaintiffs') decided to get together and hang out.  They met in the afternoon and drank

alcohol and smoked marijuana.  Later that evening, Plaintiffs were driving around the City of Troy, New York ("Troy") in a 1996 Acura.  DeWitt was driving and Hill was in the passenger seat.

When Plaintiffs reached the area of 10th Street and Hoosick Street in Troy, a maroon SUV pulled up near their car.  The SUV was driven by Defendant Troy City Police Officer Jeffrey Hoover.  Hoover was accompanied by Defendant Troy City Police Officer William Bowles.  Hoover and Bowles were members of the Street Crimes Unit who did not wear department issued uniforms and drove an unmarked police vehicle (the maroon SUV).

Although Hill admitted being familiar with Bowles and Hoover, Plaintiffs contend that they did not recognize the SUV as belonging to the Troy Police Department or its occupants as being police officers.  Based on a prior stop of DeWitt, Bowles claimed to be aware that DeWitt did not have a driver's license.  It is unclear exactly when the prior stop occurred and it does not appear that Bowles or Hoover checked on the status of DeWitt's license on January 18.  Based on information obtained from a parole officer sometime within the preceding month, Bowles and Hoover also claimed to know that Hill had a parole warrant.

Hoover attempted to stop Plaintiffs' vehicle in a manner designed to prevent Plaintiffs from fleeing in their vehicle.  Bowles claims that he got out of the SUV and displayed his badge to Plaintiffs.  Plaintiffs contend that they did not believe that the maroon SUV had anything to do with pulling them over and deny that Bowles got out of the SUV or displayed his badge.  Defendants state that Plaintiffs placed their car in reverse and then proceeded forward toward Interstate 787.  Plaintiffs continued from Hoosick Street onto Interstate 787 towards Albany.  Bowles and Hoover requested and obtained permission to pursue Plaintiffs.

Plaintiffs operated their vehicle on Interstate 787 at approximately 75-80 miles per hour.  Bowles and Hoover followed Plaintiffs from I-787 onto Route 378.  Defendant Troy City Police Officers Steven Seney and William O'Neil, who were operating a marked vehicle and were wearing department issued uniforms, heard a radio transmission from Bowles concerning the attempt to stop Plaintiffs' vehicle.  Seney requested and obtained permission to leave the City and assist Bowles.  Seney activated his emergency lights and siren and proceeded towards Route 378.

As Plaintiffs merged onto Route 378, Hill heard at least one police car with sirens. Defendants believed Plaintiffs attempted to make a U-turn, but were unable to complete the maneuver due to the speed they were traveling.  Hill denied that DeWitt tried to make a U-turn.  Plaintiffs eventually left Route 378 and turned right onto Woods Lane.  Once Plaintiffs' vehicle came to a stop, Bowles and Hoover pulled alongside Plaintiffs' car, existed their vehicle, and attempted to apprehend and arrest Plaintiffs.  Officers Seney and O'Neill arrived on the scene.  Seney existed his vehicle and went to assist Bowles while O'Nell went to assist Hoover.  Seney is claimed to have told DeWitt to stop resisting and that he was under arrest.  DeWitt denied being told that he was under arrest and to stop resisting.

Defendants claim that DeWitt resisted arrest and, therefore, Seney executed several baton strikes to DeWitt'e leg.  After a second series of baton strikes, Bowles and Seney handcuffed DeWitt.  DeWitt was then transported back to Troy where he was held pending arraignment.  DeWitt denies that he resisted arrest and asserts that he was pulled to the ground and beaten.

With respect to Hill, Defendants contend that they ordered him several times to get down on the ground and stop resisting arrest and that Hill refused to comply.  Hill denies this

and claims that the police came up to the car, pulled him out of the car, threw him down on the ground, and started beating him.  Eventually, Hill was handcuffed, placed in a police car, and held on the parole warrant.

As a result of the incident, DeWitt claims that he received bruises, scrapes, lumps, and knots, but that no bones were broken and he did not require any surgery.  Hill's injuries consisted of a dime-sized laceration on his head, bruises, abrasions and a slight limp.  Hill testified at deposition that he has not had continuing medical treatment for his injuries, but still has pain in his head.

Charges were filed in the City of Troy but subsequently dismissed.  Charges also were filed in Menands.  Hill went to trial on the charges and was found not guilty of resisting arrest.  The charge of assault in the third degree was dismissed.

## II.      STANDARD OF REVIEW

Defendant moved for summary judgment pursuant to Rule 56 seeking dismissal of Plaintiffs' claims.  Rule 56 of the Federal Rules of Civil Procedures governs motions for summary judgment.  It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56( c).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine

issue of material fact as to a dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation.  Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

With these standards in mind, the Court will address the pending motion.

**III.**      **DISCUSSION**

**a.**      **False Arrest**

Defendants move to dismiss the false arrest claims on the ground that they had probable cause, or arguable probable cause, to arrest.  Specifically, it is claimed that Defendants knew that DeWitt did not have a valid driver's license and, therefore, had probable cause to arrest him for violation of New York Vehicle and Traffic Law § 511(1)(a).  It is further claimed that Defendants knew that Hill was the subject of a parole warrant and, therefore, had probable cause to arrest him on the warrant.  DeWitt responds that "genuine issues of fact and credibility exist as to whether Bowles actually had this knowledge at the time of the stop and arrest.  Bowles claims he knew this from a . . . run in with [DeWitt] that took place months before. . . . [N]one of the defendants verified whether this information was accurate or current before they followed him out of their jurisdiction and into the next county to arrest him."  Plaintiffs appear to be arguing that Defendants acted on stale information.

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir.1996) (internal quotation marks and citation omitted); see also Amore v. Novarro, 610 F.3d 155, 167 (2d Cir. 2010). "Probable cause exists if at the time of the arrest 'the facts and circumstances within th[e officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'"  Amore, 610 F.3d at 167 (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct. 223 (1964)).  Probable cause must be evaluated based on totality of the circumstances, Jenkins v. City of New York, 478 F.3d 76, 90 (2d Cir. 2007), in light of the facts available to the arresting officer at the time of the arrest.  Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997).  Police officers may have probable cause to arrest even if the information used as the basis of that arrest is mistaken, as long as it was reasonable for the officer to rely on that information.  Bernard v. United States, 25 F.3d 98, 103 (2d Cir. 1994).  Probable cause also involves consideration of whether the available information is current or has become stale.  See United States v. Irving, 452 F.3d 110, 125 (2d Cir. 2005).  "While there is no bright line rule for staleness, the facts . . . must be sufficiently close in time . . . so that probable cause can be said to exist as of the time of the [arrest] and not simply as of some time in the past."  United States v. Wagner, 989 F.2d 69, 75 (2d Cir. 1993); see also Walczyk v. Rio, 496 F.3d 139, 162 (2d Cir. 2007).  In circumstances of continuing or ongoing conduct, as contrasted with isolated illegal acts, the passage of time becomes less significant.  United States v. Martino, 664 F.2d 860, 867 (2d Cir. 1981).

Concerning qualified immunity, the Second Circuit recently explained that:

> In determining whether an officer is entitled to qualified immunity for a false arrest claim in the absence of probable cause, we examine whether there was arguable probable cause. Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met. In deciding whether an officer's conduct was objectively reasonable for purposes of qualified immunity, we look to the information possessed by the officer at the time of the arrest, but we do not consider the subjective intent, motives, or beliefs of the officer.

Amore, 610 F.3d at 167 (internal quotations and citations omitted).

Here, Bowles testified at deposition that he tried to stop DeWitt "[p]robably a few months, a couple of months previous" to January 18. It was at this time that Bowles believed he learned that DeWitt did not have a driver's license. Bowles Dep. at pp. 16-18. There is nothing in the record contradicting or otherwise casting doubt on Bowles's statement that, at the time of the arrest, he believed that DeWitt did not have a license. Accordingly, Plaintiffs offer insufficient evidence to create a genuine dispute whether Bowles possessed this knowledge at the time of the stop and arrest. The remaining question, then, is whether Bowles's information was sufficiently current to support a finding probable cause.

The Court finds that Bowles's knowledge that DeWitt did not have a driver's license (as opposed to a suspended license) that within a few months prior to the arrest provided sufficient probable cause, or arguable probable cause, to arrest for a violation of N.Y. Veh. & Traf. Law § 511. Bowles knew that DeWitt had operated a vehicle without a license on a prior occasion a few months before January 18 and personally observed him operating a vehicle on January 18. This could reasonably have caused Bowles to conclude that DeWitt was continuing to drive without a license. While it would have been prudent for Bowles to ascertain whether, as of January 18, Bowles had a valid driver's license, it was not unreasonable for him to conclude that DeWitt may not have lawfully obtained a valid drivers

license in the intervening several months.  There is nothing in the record suggesting that Bowles had reason to believe that DeWitt obtained a driver's license in the intervening period of time or that his information had become otherwise invalid.[1]  At the very least, reasonable officers could disagree whether Bowles's information, obtained several months previous to the arrest, provided probable cause to arrest.

With respect to Hill, it is undisputed that he was the subject of a parole warrant.  It is further undisputed that Bowles and Hoover learned of the warrant prior to January 18.  Although there is some discrepancy as to when they learned of the warrant, the record evidence is that Bowles and Hoover obtained this information anywhere between a few days and "[a]pproximately a month before" January 18.  Bowles Dep. at 17; Hoover Dep. at 15 ("a few days or possible a week before. . . .").  There being no evidence suggesting that Bowles or Hoover had reason to believe that the warrant no longer existed or was otherwise invalid, this information gave Defendants probable cause, or arguable probable cause, to arrest.

Because Defendants acted with probable cause, or arguable probable cause, the false arrest and false imprisonment claims must be dismissed.

### b. Malicious Prosecution

Defendants move to dismiss the malicious prosecution claim on the ground that they acted with probable cause.  Plaintiff Hill was charged with resisting arrest in violation of N.Y. Penal Law § 205.40 and unlawful possession of marihuana in violation of N.Y. Penal Law § 221.05.  Plaintiff DeWitt was charged with Obstructing Governmental Administration in

---

[1] DeWitt concedes that he never had a valid New York State driver's license.  Thus, had Bowles performed a check, he likely would have learned that DeWitt did not have a driver's license.  Thus, from a technical standpoint, although the basis for Bowles's knowledge was several months old, it was not, in fact, stale.

violation of Penal Law § 195.05, Reckless Endangerment in the Second Degree in violation of Penal Law § 120.20, Resisting Arrest in violation of Penal Law § 205.30, Unlawful Possession of Marihuana in violation of Penal Law § 221.05, Operation of a Motor Vehicle by an Unlicensed Driver in violation of N.Y. Veh. & Traffic Law § 509.1, Making an Illegal Signal in connection a turn in violation of Veh. & Traffic Law § 1163(d), Failure to Stay in a Single Lane in violation of Veh. & Traffic Law § 1128(a), and Unsafe Backing of a Vehicle in violation of Veh. & Traffic Law § 1211.  All of the above charged were dismissed.

"To establish a claim for malicious prosecution under New York law, the plaintiff must show (1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor." Posr v. Court Officer Shield No. 207, 180 F.3d 409, 417 (2d Cir. 1999).

Here, based on the undisputed facts concerning the manner in which Plaintiff DeWitt operated his vehicle, there was probable cause to charge him with violating Veh. & Traffic Law §§ 509.1 (unlicensed operation)[2]; 1163 (illegal signal); 1128(a) (failure to stay in single lane)[3]; and 1211 (unsafe backing of vehicle)[4], and N.Y. Penal Law § 120.20 (reckless

---

[2] Plaintiff DeWitt concedes he has never had a driver's license.

[3] See Defs.' Ex. I at pp. 20-24, 28-29 (noting repeated turns and lane changes); Ex. H at. 17.

[4] See Defs.' Ex. I at p. 25, 26 (noting that, when police officers tried to block in Plaintiff DeWitt's vehicle and approached him, DeWitt put his car in reverse and started backing up, nearly striking Defendant Bowles); Ex. H. at 17.

endangerment).[5]  At the very least, Defendants are entitled to qualified immunity with respect to whether there was probable cause to support these charges.

The basis for the marijuana possession charges against Plaintiffs is unclear.  The record suggests that Defendants never found any marijuana on Plaintiffs.  Accordingly, a question of fact remains whether there was probable cause as to those charges or whether Defendants are entitled to qualified immunity concerning those charges.[6]

There also are factual issues concerning the Obstructing Governmental Administration and Resisting Arrest charges.  Defendants recount a police chase followed by Plaintiffs exiting their car, refusing to follow commands, and their refusal to submit to arrest. According to Plaintiffs, although they were aware of the SUV that was following them, they were unaware it was a police vehicle; once they determined that it was a police vehicle (because it was joined by marked police vehicles with their emergency lights activated), they pulled over; and they were pulled out of the car, thrown to the ground, and beaten.  Plaintiffs deny disobeying any commands, resisting arrest, or fighting with the officers.  Plaintiffs also submit the affidavit of a non-party witness who states that she saw "a police officer beating someone face down on the ground" and that she did not see either Plaintiff strike or kick the officers.  These factual discrepancies preclude the Court from concluding that Plaintiffs resisted arrest or refused to comply with lawful commands from a government agent and, therefore, that there was probable cause (or arguable probable cause) to charge them with

---

[5] Plaintiff concedes driving his vehicle on the highway at high rates of speed.  Moreover, there is evidence in the record that Plaintiff failed to stop at a stop sign, attempted to back his vehicle on a crowded street (nearly striking Defendant Bowles), and made numerous unsafe lane changes in the course of the chase.

[6] Although Plaintiffs concede having smoked marijuana on the date on question, Defendants do not point to any evidence in the record that Plaintiffs were found to be in possession of marijuana.

resisting arrest and/or obstructing governmental administration.[7]  The discrepancies

concerning the events of January 18 present triable issues of fact for a jury.

### c. Excessive Force

Claims of excessive force in the course of an arrest or other seizure are analyzed

under the Fourth Amendment.  Graham v. Connor, 490 U.S. 386, 395 (1989).  As the

Supreme Court has explained:

> Determining whether the force used to effect a particular seizure is "reasonable"
> under the Fourth Amendment requires a careful balancing of  the nature and
> quality of the intrusion on the individual's Fourth Amendment interests against the
> countervailing governmental interests at stake.  Our Fourth Amendment
> jurisprudence has long recognized that the right to make an arrest or investigatory
> stop necessarily carries with it the right to use some degree of physical coercion or
> threat thereof to effect it.  Because the test of reasonableness under the Fourth
> Amendment is not capable of precise definition or mechanical application,
> however, its proper application requires careful attention to the facts and
> circumstances of each particular case, including the severity of the crime at issue,
> whether the suspect poses an immediate threat to the safety of the officers or
> others, and whether he is actively resisting arrest or attempting to evade arrest by
> flight.

> The "reasonableness" of a particular use of force must be judged from the
> perspective of a reasonable officer on the scene, rather than with the 20/20 vision
> of hindsight. . . . With respect to a claim of excessive force, the same standard of
> reasonableness at the moment applies: Not every push or shove, even if it may
> later seem unnecessary in the peace of a judge's chambers violates the Fourth
> Amendment.  The calculus of reasonableness must embody allowance for the fact
> that police officers are often forced to make split-second judgments-in
> circumstances that are tense, uncertain, and rapidly evolving-about the amount of
> force that is necessary in a particular situation.

> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in
> an excessive force case is an objective one: the question is whether the officers'
> actions are "objectively reasonable" in light of the facts and circumstances
> confronting them, without regard to their underlying intent or motivation.  An
> officer's evil intentions will not make a Fourth Amendment violation out of an

---

[7] Defendants did not move for summary judgment on the other elements of a malicious
prosecution claim and, therefore, the Court will not address them.

objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

Graham, 490 U.S. at 396-397.

Here, the factual discrepancies concerning the day's events prevents the Court from finding that no fair-minded trier of fact could reasonably conclude that Defendants used that amount of force reasonably necessary to effectuate the arrests or that reasonable officers could disagree whether only a reasonable amount of force was used.  See Curry v. City of Syracuse, 316 F.3d 324, 334 (2d Cir. 2003).  If, as Plaintiffs contend, they submitted to the officers' commands and/or Defendants continued to beat Plaintiffs once they were face down on the ground and not fighting back, Defendants may have acted excessively and unreasonably under the circumstances.[8]

Defendants claim that Plaintiffs' injuries are de minimis and, therefore, insufficient to withstand summary judgment.  Plaintiff DeWitt's injuries consisted of bruises, scrapes, lumps, and knots.  Plaintiff Hill's injuries consisted of bruises, abrasions, a slight limp, and a dime-sized laceration on his head.  Hill further claims that he continues to have pain in his head from the incident that causes him to suffer headaches.  While "the extent of the injury suffered . . . is one factor to be considered when determining whether the use of force was excessive, an injury need not be serious in order to give rise to a constitutional claim."  Ortiz v. Pearson, 88 F. Supp.2d 151, 160 (S.D.N.Y. 2000); see also Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe."); Yang Feng Zhao v. City

---

[8] For example, Plaintiff DeWitt testified that he got out of the car, stood with his hands up, and Defendants "took [him] to the ground" and proceeded to beat him.  Pl.'s Ex. A at 48, 50; See also Pl.'s Ex. B at 34.

of New York, 656 F. Supp.2d 375, 390 (S.D.N.Y. 2009); Sutton v. Duguid, 2007 WL 1456222, at *12 n.20 (E.D.N.Y. 2007).  Based on the record evidence, there is a triable issue of fact whether Plaintiffs sustained injuries sufficient to recover on the excessive force claims. See Maxwell v. City of New York, 380 F.3d 106, 109 (2d Cir. 2004).

### d.  Equal Protection

Defendants move to dismiss the equal protection claim on the grounds that Plaintiffs have presented insufficient evidence that they were selectively treated in comparison to similarly situated persons or that their treatment was on account of impermissible considerations.  In response, Plaintiffs state that six officers of the Street Crimes Unit pursued them into another county on a purported traffic violation.

To succeed on a selective enforcement claim, Plaintiffs must show that: (1) compared with others similarly situated, they were selectively treated; and (2) such selective treatment is based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. LaTrieste Rest. & Cabaret Inc. v. Village of Port Chester, 40 F.3d 587, 590 (2d Cir. 1994).

Plaintiffs have not pointed to any similarly situated persons, presented any evidence showing that they were treated differently from any other persons, and have not supplied evidence suggesting the reasons for any such differential treatment.  See Miner v. Clinton County, N.Y., 541 F.3d 464, 474 (2d Cir. 2008).  Rather than relying on evidence, Plaintiffs' argument rests on conjecture, speculation, and unsupported allegations.  Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007).  Accordingly, these claims must be dismissed.

### e.  Due Process

Defendants next move to dismiss Plaintiffs' substantive due process claims. Plaintiffs contend that Defendants' use of excessive force violated their substantive due process rights.  The Supreme Court has clearly stated that "*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham v. Connor, 490 U.S. 386, 395 (1989); see also Russo v. City of Bridgeport, 479 F.3d 196, 208-09 (2d Cir. 2007); Lauro v. Charles, 219 F.3d 202, 208 (2d Cir. 2000).  Because Plaintiffs claims pertain to the claimed use of excessive force in the course of an arrest, the substantive due process claims are subsumed by the Fourth Amendment claims. Accordingly, the substantive due process claim is dismissed.

### f.   Denial of Counsel

Defendant also move to dismiss Plaintiff's denial of counsel claim arguing that there is no evidence in the record that Plaintiffs requested counsel or that any such requests were ignored.  In response, Plaintiffs do not point to any evidence in the record upon which a jury could reasonably conclude that Plaintiffs invoked their right to counsel or that Defendants infringed upon that right.  Accordingly, this claim is dismissed.

### g.  Defendant O'Neil

Defendant O'Neil moves to dismiss the claims against him on the ground that Plaintiffs have failed to allege or present evidence that he was personally involved in any constitutional violation.  In opposition, Plaintiffs do not articulate any facts concerning O'Neil's personal involvement.  Accordingly, the claims against him are dismissed.

### h.  Municipal Liability

The City of Troy moves to dismiss the claims against it on the ground Plaintiffs have failed to identify: (i) any policy or custom that caused a deprivation of any constitutional rights, or (ii) any training deficiency that contributed to any constitutional violations.  The City also contends that the individual officers involved in the January 18 incident are not policymaking officials whose actions can result in municipal liability.  In response, Plaintiffs argue that the City of Troy is liable for failure to adequately train and test its employees concerning the appropriate use of force.

Section 1983 "imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 692, 98 S. Ct. 2018 (1978) (quoting 42 U.S.C. § 1983).  "Monell does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal v. City of New York, 459 F.3d 207, 219 (2d Cir.2006).

"A municipality may be found to have a custom that causes a constitutional violation when 'faced with a pattern of misconduct[, it] does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions.'" Okin v. Village of Cornwall-On-Hudson Police Dept., 57 7F.3d 415, 440 (2d Cir. 2009) (quoting Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007)).  Here, Plaintiffs offers insufficient evidence of any pattern of misconduct.  Rather, they cite only to the January 18 incident at issue here.

"Municipal liability may also be premised on a failure to train employees when inadequate training 'reflects deliberate indifference to . . . constitutional rights.'" Okin, 577

F.3d at 440 (quoting City of Canton v. Harris, 489 U.S. 378, 392, 109 S. Ct. 1197 (1989)).

"To prove deliberate indifference, [the Second Circuit has] required the plaintiff to show: (1)

'that a policymaker knows "to a moral certainty" that . . . employees will confront a given

situation'; (2) 'that the situation either presents the employee with a difficult choice of the sort

that training or supervision will make less difficult or that there is a history of employees

mishandling the situation'; and (3) 'that the wrong choice by the . . . employee will frequently

cause the deprivation of a citizen's constitutional rights.'" Okin, 577 F.3d at 440 (quoting

Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992)).  "[T]o proceed beyond

summary judgment on the failure-to-train theory," Plaintiff must identify "'a specific deficiency

in the city's training program and [establish] that the deficiency is closely related to the

ultimate injury, such that it actually caused the constitutional deprivation.'" Okin, 577 F.3d at

440 (quoting Green v. City of New York, 465 F.3d 65, 81 (2d Cir. 2006)).  "The plaintiff must

offer evidence to support the conclusion that the training program was inadequate, not '[t]hat

a particular officer may be unsatisfactorily trained' or that 'an otherwise sound program has

occasionally been negligently administered,' and that a 'hypothetically well-trained officer'

would have avoided the constitutional violation."  Okin, 577 F.3d at 440-41 (quoting City of

Canton, 489 U.S. at 390-91, 109 S. Ct. 1197).  "The elements of an identified training

deficiency and a close causal relationship, which together require the plaintiffs to prove that

the deprivation occurred as the result of a municipal policy rather than as a result of isolated

misconduct by a single actor, ensure that a failure to train theory does not collapse into

respondeat superior liability."  Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 129-

131 (2d Cir. 2004).

Here, Plaintiffs concede that the City's use of force policy is "gone over quite extensively" during field training and then "refreshed" at in-service classes.  Pls.' Res. Stmnt. of Mat. Facts at ¶ 47.  Plaintiffs further conceded that the City's police officers are required to satisfactorily explain and have a "great understanding" of the use of force policy.  Id. at ¶ 48. Plaintiff do not point to sufficient evidence of any problem concerning the use of force by City police officer or any deficiency in the City's policies.  See Green, 465 F.3d at 82; Amnesty Am., 361 F.3d at 129-131 (2d Cir. 2004).  Plaintiffs also fail to explain how any such problems or deficiencies relate to the injuries at issue here.  Id.  Relying upon the January 18 incident is insufficient to demonstrate a failure to train.  Id.  Accordingly, the claims against the City are dismissed.

## IV.        CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.  Plaintiffs' claims concerning false arrest, denial of the equal protection of the laws, denial of the right to counsel, the denial of substantive due process are DISMISSED AS TO ALL DEFENDANTS.  All claims are dismissed as to Defendants O'Neill and the City of Troy.  In all other regards, Defendants' motion for summary judgment is DENIED, leaving claims for the use of excessive force, assault and battery, and malicious prosecution concerning the charges of marijuana possession, resisting arrest, and the obstruction of government administration.

IT IS SO ORDERED.

Dated:August 19, 2010

Thomas J. McAvoy
Senior, U.S. District Judge